IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Edna Selan Epstein, Individually and On Behalf of All Others Similarly Situated, | ) Civil Action No.: 6:14-cv-01606-MGL )  |
| Plaintiff, | ) |
| v. | ) **OPINION AND ORDER** ) |
| World Acceptance Corporation, A. Alexander McLean, III, John L. Calmes, Jr., Kelly M. Malson, and Mark Roland, | ) ) ) |
| Defendants. | ) |

Before this Court is Defendants World Acceptance Corporation, A. Alexander McLean, III, John L. Calmes, Jr., Kelly M. Mason, and Mark Roland's ("Defendants") Motion to Dismiss Plaintiff's Amended Complaint brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 58 & 59.)  Having considered the motion and the responses filed (ECF No. 64 & 69), the record, and the applicable law, the Court denies Defendants' Motion to Dismiss for the reasons set forth below.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Edna Selan Epstein ("Plaintiff") originally filed this securities class action on April 22, 2014, pursuant to §§ 10(b), and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act") and Rule 10b-5 on behalf of all investors who purchased or acquired the common stock of World Acceptance Corporation ("World") between April 25, 2013 and March 12, 2014 (the "Class Period").  (ECF No. 1.)  Plaintiff filed an amended class action complaint on August 12, 2014, alleging that during the Class Period, Defendants participated in a fraudulent scheme to artificially inflate World's stock price by misrepresenting and concealing information about World's business practices. (ECF No. 50 at 4.)   Defendants filed a motion to dismiss the amended complaint on September 16, 2014. (ECF No. 58 & 59.)  Plaintiff filed a response in opposition to Defendants' motion to dismiss on October 21, 2014 (ECF No. 64) and Defendants filed a reply in support of their motion on November 17, 2014.  (ECF No. 69.)  The Court has considered the motions, memoranda, and arguments of the parties, and this matter is now ripe for disposition.[1]

## STANDARD OF REVIEW

Defendants move to dismiss this putative securities fraud class action under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Amended Complaint fails to satisfy the applicable heightened pleading standards of the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 9(b).  (ECF No. 58.)  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999).   In considering a motion to dismiss, a plaintiff's well-pled allegations are accepted as true, and the complaint and all reasonable inferences are liberally construed in the plaintiff's favor.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993); *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  The court

may consider only the facts alleged in the complaint, which may include any documents reference, and matters of which the court may take judicial notice.[2]  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety as well as any documents attached to or incorporated into the complaint."). If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(d). Further, all parties must be given a reasonable opportunity to present material that is pertinent to the motion. *Id.*

To survive a motion to dismiss in a securities fraud case, a plaintiff must satisfy procedural and substantive pleading requirements. *Pearce v. UBS PaineWebber, Inc.*, No. 3:02-2409-17, 2003 WL 25518056, at *3 (D.S.C Nov. 4, 2003). Pleading requirements are usually governed by Rules 8 and 9 of the Federal Rules of Civil Procedure, however, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), imposes additional requirements applicable here. *Id.*; *Latham v. Matthews*, 662 F.Supp. 2d 441, 456 (D.S.C. 2009). First, Rule 9(b) requires that in all actions alleging fraud, the circumstances alleging fraud must be "state[d] with particularity." Additionally, the PSLRA requires that a securities fraud Plaintiff "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (internal citations and quotations omitted). The Fourth Circuit has noted that the PSLRA modifies the

traditional Rule 12(b)(6) analysis: "(1) by requiring a plaintiff to *plead facts* to state a claim and (2) by authorizing the court to assume that the plaintiff has indeed stated *all* of the facts upon which he bases his allegation of a misrepresentation or omission." *Teachers' Retirement System of Louisiana v. Hunter*, 477 F.3d 162, 172 (4th Cir.2007) (emphasis in original). The PSLRA also requires a plaintiff to plead sufficient facts to raise a *strong inference* of scienter. *Id.* (emphasis in original).

In sum, to properly plead a claim for relief pursuant to § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, a plaintiff must allege "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance ... (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *Teachers' Retirement System of Louisiana v. Hunter*, 477 F.3d at 172 n. 2 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).[3] Facing a 12(b)(6) motion to dismiss, the Court's inquiry "becomes whether, if those facts alleged in the complaint are true, relief could be granted on the plaintiffs' claim." *Id.* at 173. The PSLRA requires the district court to dismiss the complaint, on motion of any defendant, if the pleading requirements for alleging misrepresentations and scienter are not met. 15 U.S.C. § 78u-4(b)(3)(A).

## DISCUSSION

Plaintiff filed a lengthy Amended Complaint against World as well as Defendants McLean, Calmes, Malson, and Roland ("Individual Defendants") who were senior executive officers of World during and prior to the Class Period. (ECF No. 50 at 9.) The Court has analyzed the Amended Complaint in great detail in light of the arguments made in the Motion to Dismiss.

According to the allegations of the Amended Complaint, World is a small-loan consumer finance business offering short-term and medium-term installment loans. Plaintiff alleges that she purchased World common stock at "artificially inflated prices during the Class Period and suffered an economic loss when true facts about the Company's illicit lending practices and inflated growth were disclosed, and the stock price resultantly declined." (ECF No. 50 at 8.) Plaintiff's allegations concerning Defendants' allegedly materially false and misleading statements and Defendants' scienter are based on certain "confidential witnesses" to include former employees of World and other industry participants who are described but not named in the Amended Complaint. (ECF No. 50 at 12.)  For specific counts, Plaintiff alleges:1) all Defendants committed violations of Section 10(b) of the Exchange Act and Rule 10b-5 (promulgated under that Act) by deceiving the investing public and artificially inflating and maintaining the market price of World's securities by making untrue statements and omissions about World's value and growth, and engaging in and concealing deceitful business and lending practices (ECF No. 50 at 104-105); and 2) the individual defendants violated Section 20(a) of the Exchange Act through their acts and omissions as controlling persons of World who participated in or were aware of World's operations, practices, and business prospects. (ECF No. 50 at 108-109.)

Defendants argue that the Amended Complaint must be dismissed for failing to comply with the mandates of the PSLRA and Rule 9(b)'s heightened pleading standard. (ECF No. 58.)  Specifically, Defendants maintain that Plaintiff failed to plead with the required particularity how or why World's loan practices were illegal, which laws World allegedly violated, and how any of World's disclosures or statements regarding legal

and regulatory matters were false or misleading. (ECF No. 58-1 at 1-2.) Defendants also argue that many of the public statements challenged by Plaintiff are "forward-looking" and are accompanied by meaningful cautionary language such that they fall under the PSLRA's "safe harbor" provision. (ECF No. 58-1 at 2.) Further, Defendants state that the Amended Complaint fails to establish the "strong inference" of scienter required and also fails to connect any individual defendant to knowledge of or participation in the alleged fraud. (ECF No. 58-1 at 2.) Finally, Defendants argue that Plaintiff fails to allege that her investment losses were caused by the alleged fraudulent activity of which Plaintiff complains to establish loss causation. (ECF No. 58-1 at 2-3.)

1. **Section 10 (b) and Rule 10b-5 Claim**

First, the Court will address Plaintiff's 10(b) claim asserted against all Defendants.

Section 10(b) makes it unlawful to employ deceptive or manipulative devices "in connection with the purchase or sale of any security." 15 U.S.C. § 78j. To summarize the allegations of the Amended Complaint, Plaintiff states four primary categories of misrepresentations concerning World's lending practices, marketing of credit insurance products, misleading growth from loan renewals, and the impact of state and federal regulatory oversight on World's operational and financial health. (ECF No. 64 at 17.) The Amended Complaint sets forth its accounting of Defendants' false and misleading statements and omissions as follows:

1)   World's third quarter financial results to include a SEC Form 8-K attaching both a press release and a "Summary of Quarterly Results" dated January 30, 2013 and indicating positive growth trends and financial results, a January 30, 2013

conference call with analysts to discuss World's financial results and reported successes, and a third quarter 2013 Form 10-Q filed on February 8, 2013 and related certifications which failed to disclose certain materially adverse conditions to the market (ECF No. 50 at 46-53);

2) World's fourth quarter and fiscal year 2013 results to include a SEC Form 8-K attaching a press release and a "Summary of Quarterly Results" dated April 25, 2013 reporting strong loan and revenue growth and a positive outlook on the regulatory and legislative front, an April 25, 2013 conference call "showing confidence in [World's] relationship with the state regulators and downplaying any concerns over federal oversight," and an amended fiscal 2013 Form-K filed on July 19, 2013 and related certifications which failed to disclose problematic marketing, accounting, and lending practices (ECF No. 50 at 53-62);

3) World's first quarter 2014 results released on July 25, 2013 via press release and a "Summary of Quarterly Results" filed with the SEC on Form 8-K reporting strong financial results and explaining the circumstances of a deficiency uncovered in World's process for evaluating allowances for loan losses, a July 25, 2013 conference call with analysts addressing how the deficiency might impact business, and a first quarter 2014 Form 10-Q filed with the SEC on August 6, 2013 and certifications which made several positive statements about continued success and increased loan growth amid a changing regulatory landscape (ECF No. 50 at 63-72);

4) World's second quarter 2014 results announced on October 24, 2013 via press release and "Summary of Quarterly Results" filed with the SEC on Form 8-K

indicating loan growth and revenue increases, an October 24, 2013 conference call which included a discussion of World's accounting for small-dollar renewals and quarterly loan losses as well as the federal regulatory landscape, and the second quarter 2014 Form 10-Q and certifications filed on November 1, 2013 with the SEC which failed to report that World's success was predicated on "faulty accounting" (ECF No. 50 at 73-78); and

5) World's third quarter 2014 results announced on January 28, 2014 by way of a press release and "Summary of Quarterly Results" filed on SEC Form 8-K which noted improved third quarter financial results, a January 28, 2014 conference call with analysts providing false assurances concerning growth rates and the company's business, and third quarter 2014 Form 10-Q and certifications filed on February 5, 2014 reiterating increased revenues, loan growth, and strengthened business. (ECF No. 50 at 79-84.)

Plaintiff claims that the truth about World's "artificially inflated loan growth began to emerge on July 25, 2013" when World held a conference call with analysts to discuss World's accounting of small-dollar loan refinancing.  (ECF No. 50 at 91.)  Plaintiff contends that the impact of the accounting weakness was further revealed when World began posting low quarterly loan growth and when World filed a Form 8-K on March 13, 2014, to announce the receipt of a Civil Investigative Demand from the Consumer Financial Protection Bureau inquiring about World's business practices. (ECF No. 50 at 84-85.) Additionally, Plaintiff notes that on April 29, 2014, Defendants revealed that World had changed its policies on small-money renewals which impacted World's quarterly loan volume, balances outstanding, and overall yields. (ECF No. 50 at 86-88.)

Plaintiff alleges that these revelations, and the resulting analyst commentary, caused the stock prices to drop significantly and investors to lose millions of dollars. (ECF No. 50 at 89.) Plaintiff further claims that the rapid drop in World's stock price was the direct result of nature of the revelations made to investors and the market regarding World's marketing and lending practices which had previously been concealed or misrepresented. (ECF No. 50 at 94 & 96.) Plaintiff maintains her entitlement to a presumption of reliance throughout the Class Period under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and under the fraud-on-the-market doctrine because of the nature of World's publically traded securities.  (ECF No. 50 at 99-100.) Plaintiff further posits that the federal statutory safe harbor provision does not apply to any of the allegedly false and misleading statements set forth in the Amended Complaint. (ECF No. 50 at 101.)  In its opposition to Defendants' Motion to Dismiss, Plaintiff argues that a holistic consideration of the Amended Complaint's cumulative allegations support an inference of scienter, in that Defendants acknowledged their continued close focus on monitoring and evaluating aspects of the company's loan volume and growth, business processes and systems, and collection efforts, and made reassurances to the public all while failing warn investors of weaknesses and problems of which it already knew. (ECF No. 64 at 26-31.)

      a. False Statement or Omission of Material Fact

To establish the first element in a securities fraud action, Plaintiff "must point to a *factual* statement or omission-that is, one that is demonstrable as being true or false" and the "statement must be *false*, or the omission must render public statements misleading." *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir.1999) (emphasis in

original); 15 U.S.C. 78u-4(b)(1). Additionally, "any statement or omission of fact must be material," meaning objectively significant to a reasonable investor. *Id.* at 682-683; *Phillips v. LCI International, Inc.*, 190 F.3d 609, 613 (4th Cir.1999) ("If a reasonable investor, exercising due care, would gather a false impression from a statement, which would influence an investment decision, then the statement satisfies the initial element of a 10(b) claim.") "In particular contexts when it is both factual and material, [opinion or puffery] may be actionable." *Longman*, 197 F.3d at 683; *see also Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir.2004).

The complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "If the plaintiff fails to allege *all* facts but does allege *sufficient* facts to support a *reasonable belief* in the allegation that the defendant's statement was misleading, the court should deny the Rule 12(b)(6) motion as to this 'misrepresentation' element." *Teachers' Retir. Sys. of La. v. Hunter*, 477 F.3d at 174. The Fourth Circuit has held that in "[d]etermining whether the complaint satisfies this standard necessarily entails a case-by-case assessment of the complaint as a whole." *Id.* at 174.

In light of these standards, the Court concludes that Plaintiff has satisfied the relevant substantive and procedural pleading requirements. The Amended Complaint sets forth "sufficient facts to permit a reasonable person to find that the plaintiff satisfied this element of his claim—that the defendant made a false or misleading statement." *Id.* at 173. The Amended Complaint specifically identifies several alleged

misrepresentations and omissions concerning World's lending practices, loan growth and revenue, and company health, and sets forth the time, place and content of the statements and why the statements were material, as well as false or misleading when made. (*See, e.g.*, ~~ 139, 144, 169, 175, 176, 180, 186, 196, 213, 220, 228). In her opposition to the motion to dismiss, Plaintiff points to an assurance of Defendant McLean that certain accounting software systems were since put in place to address World's "material weakness" in accounting for small-dollar loan renewals as an example of a situation where Defendants had certain information about the true condition of the business but failed to reveal relevant details. (ECF No. 64 at 30-31.) The Amended Complaint also sets forth the necessary allegations as to the Individual Defendants (McLean, Calmes, Mason, and Roland) for primary and controlling person liability (¶ 286) and designates the allegedly fraudulently misleading and false statements made by each Defendant. (*See, e.g.*, ~~133, 134, 141, 142, 152, 154, 155, 166, 177, 179, 180, 182, 183, 184, 186, 187, 188, 190, 194, 203, 205, 211, 220, 226, 237, 240, 241). Additionally, the Amended Complaint's reliance on statements by confidential sources does not undermine the sufficiency of the Amended Complaint's misrepresentation allegations where the sources have been identified and described with sufficient particularity to lend credibility to the statements. *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d at 174; *Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 885-886 (4th Cir. 2014).

Of course, it is clear that Defendants deny the allegations of the Amended Complaint, disagree with Plaintiff's views of the accounting and other issues, and may have compelling arguments to support their position. The Court, however, is not in a

position to address the truthfulness of these statements versus Defendants' view of the facts at this juncture.  All that is required of Plaintiff is to allege facts, that if true, form the basis of relief sought.  *See Teachers' Ret. Sys. of La. v.  Hunter*, 477 F.3d at 173.  Plaintiff has done so here.

b. "Safe Harbor" Protection for Certain Challenged Statements

Defendants argue that certain of its allegedly false and misleading statements are protected by the Safe Harbor provision of the PSLRA. (ECF No. 58-1 at 19.) The Safe Harbor provision outlined in 15 U.S.C. § 78u–5(c)(1)(A) provides protection for "forward-looking" statements made by company representatives when such statements are: 1) identified as forward-looking statements as accompanied by meaningful cautionary statements identifying factors that could cause actual results to differ materially from the forward-looking statements; or 2) immaterial; or 3) the Plaintiff fails to prove the forward-looking statement was made with actual knowledge that the statement was false or misleading.  15 U.S.C. § 78u–5(c)(1)(A)-(B).

The Court has considered the statements cited in the complaint to include the challenged "forward-looking statements" and the accompanying cautionary language cited by Defendants in accordance with 15 U.S .C. § 78u–5(e).   (ECF No. 58-2.) Defendants specifically maintain that statements identified in paragraphs 133, 134, 152, 180, 183, 184, 190, 203, and 205 of the Amended Complaint constitute "Forward-Looking Statements," made during earnings calls during the Class Period, accompanied by meaning  cautionary language contained in World's filings with the SEC. (ECF No. 58-1 at 20-21.)  But as even Defendants admit, these statements do not constitute the whole sum of the statements asserted by Plaintiff to be false and

misleading and otherwise unprotected by the Safe Harbor provision. (ECF No. 58-1 at 19-20). Plaintiff, for example, maintains that certain disclosures cannot be classified as forward-looking because they purport to warn investors of risks concerning World's practices of which Defendants were already aware. (ECF No. 64 at 26.) Because not all of the statements in the Amended Complaint can be clearly classified as forward-looking or as mere immaterial puffery at this stage of the litigation, the Court cannot conclude that the Safe Harbor provision extends absolute immunity from liability. *See Raab v. Gen. Physics Corp.*, 4 F.3d 286, 289 (4th Cir.1993); *City of Ann Arbor Employees' Retir. Sys. v. Sonoco*, 4:08-cv-2348, 2009 WL 2487045, *2 (D.S.C. Aug. 14, 2009).

### c. Strong Inference of Scienter

Defendants also challenge Plaintiff's failure to allege particularized facts raising a strong inference of scienter on the part of each defendant. (ECF No. 58-1 at 22.) Specifically, Defendants note that Plaintiff's allegations of a company-wide scheme and accounting deficiencies do not raise a strong inference of scienter and that Plaintiff fails to link Defendants to any knowledge or participation of fraudulent behavior. (ECF No. 58 at 23.)

In this securities fraud action, Plaintiff must allege facts that support a "strong inference of scienter" and allegations of reckless conduct can satisfy the level of scienter necessary to survive a motion to dismiss. *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d at 174; *see also* 15 U.S.C. 78u-4(b)(2)(A); *Zak*, 780 F.3d at 606 (noting that to demonstrate scienter, a plaintiff must show that the defendant acted with a mental state embracing intent to deceive, manipulate or defraud). The question for the Court is

whether "the allegations in the complaint, viewed in their totality and in light of all of the evidence in the record, allows [the Court] to draw a strong inference, at least as compelling as any opposing inference," that Defendants knowingly or at least recklessly defrauded investors by way of the alleged misstatements. *Public Employees' Retirement Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 313 (4th Cir. 2009). The Court ultimately evaluates the allegations of scienter holistically, but only affords the allegations the "inferential weigh warranted by context and common sense." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 183 (4th Cir. 2009).

The Court has carefully considered Plaintiff's allegations concerning World's loan growth, loan renewals, and allowances for loan losses and Defendants' statements concerning the same made during the Class Period about the company's business measures and finances. (*See, e.g.*, ¶¶109-121.)   Taking all of the allegations of the Amended Complaint together, Plaintiff has alleged facts that give rise to a strong inference of the existence of recklessness by claiming that Defendants had information about the true nature of its business conditions and performance but withheld making certain disclosures in order to control the timing and flow of the information. (*See, e.g.*, ¶¶110, 111, 112, 114, 115, 116, 117, 118, 119.) *See Matrix Capital Mgmt. Fund*, 576 F.3d at 188 ("A strong inference of scienter might arise when there are sufficient red flags to alert senior officers to the unreliability of statements about internal controls and financial information."); *see also Ottman v. Hanger Orthopedic Group, Inc.,* 353 F.3d 338 (4th Cir. 2003).   Here, the Amended Complaint satisfies PSLRA, and the court denies Defendants' motion to dismiss on this ground.

      d. Loss Causation

Defendants claim that Plaintiff's Amended Complaint fails to properly allege that Plaintiff's investment losses were caused by the alleged fraud of which Plaintiff complains because none of the alleged disclosures qualify as a "corrective" event that reveals the alleged fraud. (ECF No. 58-1 at 29-30.) A plaintiff in a private securities action "shall have the burden of proving that the act or omission of the defendant...caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. §78u-4(b)(4). In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court held that it is not sufficient to establish loss causation in a civil securities fraud action by merely alleging that the purchase price was inflated because of misrepresentations. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005). The Court evaluates allegations of loss causation for "sufficient specificity," "a standard largely consonant with Fed.R.Civ. P. 9(b)'s requirement that averments of fraud be pled with particularity." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). A plaintiff may plead loss causation on the theory that the truth was gradually revealed to the market place over time, meaning that "neither a single complete disclosure or a fact-for-fact disclosure of the relevant truth to the market is a necessary prerequisite to establishing loss causation (although either may be sufficient)." *Id.* at 472-473.

In this case, based on the standards set forth above, Plaintiff has sufficiently alleged loss causation necessary to withstand Defendants' motion to dismiss. In addition to setting forth the alleged false and misleading statements and omissions that caused World's stock to trade at artificially inflated prices, the Amended Complaint also includes detailed assertions as to the manner in which certain "truths" about World's practices, including an announcement about a federal investigation, were revealed to

the market over time which caused World's stock prices to decline. (*See, e.g.,* ~~ 230-233, 250-257, 264.)  At this stage of the litigation, Plaintiffs need only allege, with sufficient specificity, a causal connection between the material statements and the resulting loss that occurred.  Plaintiff has done so here.

### 2. **Section 20 Derivative Claims**

Defendants claim that Plaintiff's "Controlling Person" claims fail as purely derivative of the Section 10(b) claims. (ECF No. 58-1 at 34-35.)  Defendants simply state that because Plaintiff has failed to state a claim under Section 10(b), the Section 20(a) claims also fail. (ECF No. 58-1 at 35.)  Section 20(a) imposes secondary liability, joint and severally, on any person who "controls" a person liable for a securities act violation, based on the control person's knowledge of and substantial assistance in the consummation of the primary violation.   *See* 15 U.S.C. 78t;   *Pearce v. UBS PaineWebber, Inc.*, 3:02-2409-17, 2003 WL 25518056, *13 (D.S.C. Nov. 4, 2003).  "The Court makes no finding here as to whether any Individual Defendants exercised control over the alleged violations, only that the Plaintiffs have sufficiently pled this cause of action." *Latham v. Matthews*, 662 F. Supp. 441, 469 n. 24 (D.S.C. 2009).  Because the Court finds Plaintiff has stated a claim for primary liability for securities fraud, the Court declines to dismiss the Section 20(a) claims.

### **CONCLUSION**

For the reasons set forth above, Plaintiff has satisfied the requisite procedural and substantive pleading requirements to maintain a cause of action for primary liability for securities fraud under Section 10(b) and Rule 10b-5, and for control person liability for securities fraud under Section 20(a) of the Securities Exchange Act. Accordingly,

Defendants' Motion to Dismiss Plaintiff's Amended Complaint is hereby DENIED. (ECF No. 58.)

  IT IS SO ORDERED.

             /s/Mary G. Lewis
             United States District Judge

Columbia, South Carolina
May 18, 2015

---

[1] Defendants filed a request for oral argument on the Motion to Dismiss the Amended Complaint. (ECF No. 60). Whether to schedule an oral hearing on motions is entirely within the court's discretion. *See United States Fidelity and Guaranty Co. v. Lawrenson*, 334 F.2d 464, 466–67 (4th Cir. 1964) ("The wisdom of leaving a hearing to the discretion of the district court is obvious.") In this case, the Court has carefully analyzed the allegations of the Amended Complaint in their entirety and has been fully informed of the issues through the briefs of the parties. The Court therefore concludes that a hearing on the motion is unnecessary and denies Defendants' request for a hearing on the motion in accordance with Local Rule 7.08, D.S.C.

[2] Here, Defendants have attached several documents, i.e., SEC filings and earnings call transcripts to their motion to dismiss. (ECF No. 58 & 59.) Plaintiff complains that Defendants are attempting to introduce facts (primarily about World's stock repurchases) beyond the four corners of the Amended Complaint for the purposes of contradicting Plaintiff's allegations of scienter. (ECF No. 64 at 33.) Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-607 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). In accordance with the Fourth Circuit's recent directives in *Zak* and in construing the facts in the light most favorable to Plaintiff, this Court declines to take judicial notice of any SEC documents that do not relate to the contents of the Amended Complaint and will not consider such materials as evidence contradicting the Amended Complaint nor will the Court convert the motion to dismiss into one for summary judgment. *Id.* at 601, 607.

[3] Defendants do not challenge the sufficiency of the Amended Complaint based on inadequacy of the allegations of misrepresentations or omissions as they concern the purchase or sale of a security, reliance, or existence of alleged economic losses. For purposes of addressing the instant motion, the Court will address in detail those aspects of the Amended Complaint that Defendants argue entitle them to dismissal.